

# The Attorney General of Texas

April 15, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Carl A. Parker
Chairman
Education Committee
Texas State Senate
P. O. Box 12068, Capitol Station
Austin, Texas   78711

Opinion No. JM-309

Re: Whether foreign nation
admitted to the United Sta
under an F-1 "student" visa
be charged a higher tuition r
at a state university than t
charged to Texas residents or
residents of another state

Dear Senator Parker:

You inquire whether the constitutional questions discussed
Attorney General Opinions JM-267 (1984) and JM-241 (1984) prev
charging foreign nationals admitted to this country with F-1 stud
visas a higher tuition rate at a state university than that charged
Texas residents or to other students who are not Texas residents.
latter group includes out-of-state students who are citizens of
United States and students who are aliens with visas other than an
visa. It is our opinion that the state may charge foreign stude
with F-1 visas a higher rate of tuition than it charges students
are Texas residents but may not charge such foreign students a hi
rate of tuition than it charges students who, for tuition purpo
are not Texas residents.

The Texas Education Code provides different rates of tuition
state supported institutions of higher education for students who
residents of Texas and for students who are not residents of Te
See Educ. Code §54.051. The constitutionality of that distinction
not questioned. See Note, The Constitutionality of Nonresi
Tuition, 55 Minn. L. Rev. 1139 (1971).

Attorney General Opinion JM-241 discussed the applicability
the United States Supreme Court decision in Toll v. Moreno, 458 U.
(1982), to the provisions of section 54.057 of the Education C
That section of the Education Code provides that two groups
immigrant aliens may qualify for the resident status and resi
tuition in Texas, namely, those with a visa permitting perma
residence and those who declare their intention to become Un
States citizens. By implication, section 54.057 states that all o
aliens, including all nonimmigrant aliens, are precluded

establishing that their domicile is Texas and that they are in fact Texas residents who qualify for resident tuition. We concluded in Attorney General Opinion JM-241 that the Supremacy Clause of the United States Constitution, as interpreted by Toll v. Moreno, prohibits a state from denying certain categories of nonimmigrant aliens the right to qualify for resident tuition when such non-immigrant aliens can show that they meet the standards for resident status required of citizens. We also conclude that the decision in Toll v. Moreno does not apply to a nonimmigrant alien in this country under an F-1 visa because that is one of the categories for which Congress expressly conditioned admission to this country on conditions which have the effect of precluding the establishment of a domicile in the United States. The Immigration and Nationality Act (8 U.S.C. §1101(a)(15) (1982)) defines an alien with an F-1 visa as

> (F)(1) an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in a language training program in the United States. . . .

Although the word domicile is not defined in the Immigration and Nationality Act, it generally is accepted that domicile is not established unless the person intends to establish a permanent abode or reside indefinitely in a location. In order to qualify for an F-1 student visa, the alien must "enter the United States temporarily and solely for the purpose of pursuing such a course of study" and must maintain "a residence in a foreign country which he has no intention of abandoning." Hence, the courts have concluded that a person cannot be lawfully domiciled in this country while holding a student visa. See Elkins v. Moreno, 435 U.S. 647, 665 (1978); Anwo v. Immigration & Naturalization Service, 607 F.2d 435, 437 (D.C. Cir. 1979). Since the Immigration and Nationality Act does not impose such restrictions on every nonimmigrant class, the courts interpret the act to mean that Congress intended to allow nonrestricted, nonimmigrant aliens to adopt the United States as their domicile. See Toll v. Moreno, 458 U.S. at 14.

Accordingly, it is our opinion that the Supremacy Clause of the United States Constitution as interpreted by Toll v. Moreno does not prevent the application of the limitations in section 54.057 of the Education Code to persons admitted to this country with F-1 student visas. We conclude that the Education Code constitutionally can

provide for a higher tuition rate to be charged to foreign students with F-1 visas than the tuition rate charged students who are Texas residents for tuition purposes.

In Attorney General Opinion JM-267 we concluded that a state statute which provides a higher rate of tuition at state institutions of higher education for nonresident students who are aliens than the rate charged nonresident students who are United States citizens would not be upheld by the courts if challenged.

The Fourteenth Amendment to the United States Constitution provides that no state may deny to any person within its jurisdiction the equal protection of the laws. The guarantee of equal protection applies to all persons within the territorial jurisdiction of a state regardless of whether a person is a citizen of this country or is a citizen of a foreign country. See Ambach v. Norwick, 441 U.S. 68 (1979); Yick Wo v. Hopkins, 118 U.S. 356 (1886). The obligation of a state to provide the protection of equal laws is imposed by the Constitution on the state with each state responsible for its own laws establishing the rights and duties of persons within its borders. See Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 350 (1938). Congressional debate concerning the resolution which became the Fourteenth Amendment confirms the intention to make its provisions applicable to all who "may happen to be" within the jurisdiction of a state. See Plyler v. Doe, 457 U.S. 202, 214-15 (1982). In concluding that illegal aliens may claim the benefits of the Fourteenth Amendment's guarantee of equal protection, the Supreme Court in Plyler v. Doe stated

> [t]hat a person's initial entry into a State, or into the United States, was unlawful, and that he may for that reason be expelled, cannot negate the simple fact of his presence within the State's territorial perimeter. Given such presence, he is subject to the full range of obligations imposed by the State's civil and criminal laws. And until he leaves the jurisdiction -- either voluntarily, or involuntarily in accordance with the Constitution and laws of the United States -- he is entitled to the equal protection of the laws that a State may choose to establish.

Id. at 215.

A person of foreign nationality with an F-1 student visa who is attending school in this state is present within the state's territorial perimeter and is entitled to the equal protection of the laws of the state. The fact that the student has a "residence in a foreign country which he has no intention of abandoning" does not negate his

presence in this country and in this state and does not deny the student the right to equal protection of the laws.

Additionally, we concluded in Attorney General Opinion JM-267 that the courts would not allow a state subtly to affect the country's international relations or foreign policy or to interfere with the federal government's exclusive right to control the immigration and admission of aliens to this country. In Elkins v. Moreno, 435 U.S. 647, the United States Supreme Court determined that Congress defined the nonimmigrant classes of aliens in the Immigration and Nationality Act to provide for the needs of international diplomacy, tourism, and commerce.

It is our opinion that the constitutional problems discussed in Attorney General Opinion JM-267 are applicable to foreign students admitted to this country with F-1 visas and would render unconstitutional a state statute which provides for a higher rate of tuition to be charged to foreign students with F-1 visas than the rate charged to citizens and aliens with other categories of visas who are subject to the payment of nonresident tuition because they are not Texas residents eligible for resident tuition in this state.

## S U M M A R Y

The Texas Education Code constitutionally can provide for a higher tuition rate to be charged to foreign students admitted to this country with F-1 visas than the tuition rate charged Texas resident students. The Education Code cannot provide constitutionally for a higher tuition rate to be charged to foreign students with F-1 visas than the tuition rate charged citizens and other alien students who are not Texas residents for tuition purposes.

Very truly your

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton